16667 United States of America v. Johnny Phillips Good morning. Good morning, Your Honors. May it please the Court, Alex Little on behalf of Johnny Phillips. It's clear from the record, I'm going to take you about 100 years from airplanes to coal, that New Century Coal, at some point in its operation, became a criminal enterprise. The question at trial was when and what knowledge and agreement did Johnny Phillips have about those fraudulent activities. The case against Johnny Phillips was incredibly thin. It was thin from the very beginning, when the first cooperator came into the FBI, talked for hours and hours about all the bad activities of his associates and never mentioned Johnny Phillips' name. It was thin when that associate and another recorded hundreds of hours of undercover conversations and not once was there an inculpatory statement about Johnny Phillips. And it was thin when they searched every document and indicted this case with numerous... Don't you agree that underlying all this was a fraudulent set of acts? So put your client to the side. Yes. It didn't exist. Talk about Rose and the others. There absolutely was a fraudulent conspiracy that was run by a number of individuals, and the question at trial was not that. Okay. So we accept that, and then what we have on review when it comes to sufficiency is a conspiracy charge against your client, right? So that didn't require the government to prove the underlying fraud and that Phillips participated in it. What the conspiracy requires is there is this underlying fraud. You've just acknowledged that was true. He joined the agreement and someone did an affirmative act in support of it. So I guess the point I'm making is you emphasize so much in the briefs the lack of evidence that he, your client, was doing the fraudulent acts, and I don't think that's what the question is on appeal. Am I missing something? No, you're not. That's not the question on appeal with the first issue. With two, three, four, and five, it becomes that issue very clearly because the second issue that we raise is this jury instruction that we've requested. Okay. I want to go back to that, but let's just make sure we're getting the sufficiency argument because that's important. Isn't there evidence that a jury could rely on to say that he knew what was going on and participated? I think the only evidence that was potentially there would be the uncorroborated testimony of Kirk Rose about some of those statements. I think every other witness would. But once the jury gets that testimony, that's sufficient, isn't it? It could have been. And so I don't want to waste your time on the sufficiency argument. Okay. All right. So let's go to issues two through whatever. But the reason that that is so important is because the way that the jury proceeds, both with the deliberations and the question they ask, and with our jury instruction that we ask about, is to focus the attention on what evidence there was really about Johnny Phillips, his agreement, his participation in the overarching conspiracy. On the only question the jury was asked about with respect to did Johnny have specific knowledge and intent, there were two counts. They were both money laundering counts. They acquitted on those counts. On the conspiracy charge, they asked a jury question that said, essentially, are the parts of mail and wire, do they need to be attached to convict him of conspiracy? Were you counsel below or just on appeal? We were both at trial. Were you counsel below? Yes. Well, I don't know if it was you, but I thought his lawyer below acknowledged when the judge was trying to figure out what this question meant, uncertainty about what it meant, which I found not ineffective assistance. I found to be an understandable reaction to the question. I think our response was, you know, after first reading it, give us a second to look at it. We're not sure what they mean. We just read it one time. And then we very quickly said, look, they're asking about elements being missing. Our direct, in the transcript, we say, and I think I was the one who said it, no, they need to be told that all of the things must be included. I mean, all of the elements must be present. And the judge just says, well, I'm not going to do that. And so I think that that answer was insufficient because they're asking, can we have an omission? And why that's important is they're asking about mail and wire. And the evidence focused so strongly on this incident, the single in-person meeting in Missouri, where there wasn't mail, there wasn't wire. There weren't sort of conversations about that that Johnny was involved in. The mail and wire doesn't matter, right? We're back to conspiracy. It doesn't matter except they have to find that, I believe, he's got to know that there is a conspiracy. He agrees to its aims. Yes. To its aims. And so the question they're asking about doesn't make sense. I mean, there was plenty of evidence that somebody was sending things in the mail and that somebody was sending things through wire communications. But they're asking about that with respect to Johnny Phillips in a way which suggests that they have real concerns that Johnny is involved in that conspiracy, that overarching problem. That he is or isn't? Whether or not he was at all. And I think the question asks. What's wrong with referring him back to the instructions where you have the conspiracy charge where they can review it and say that he doesn't need to be guilty of mail or wire fraud. He just needs to be guilty of the conspiracy with an overt act. I think if the jury asks, can we do something without element X, the judge has to answer no. And although it says that in the instructions. Go ahead. I was going to say, but the judge covered that in the original instructions. And even though you rightly say that the jury had concerns, that is a part of the deliberative process. And ultimately they resolve those concerns against your client. So what's wrong with that? I think to kind of shift gears, what's wrong with that in part is because we believe they did so based solely on his knowledge that other co-conspirators had used assumed names. And that's why we asked for an instruction from Sadler to make it clear that that piece alone, standing alone, could not be sufficient or would not necessarily be material. And the judge denied that instruction. The government has argued that it's not a correct statement of law. But doesn't Sadler basically say that there is no statutory right to completely accurate information before making an otherwise fair exchange? And how does that affect what you're arguing here? It affects it in this way. Okay. Johnny Phillips, the evidence showed, was involved in what he believed to be a legitimate coal operation. He did things which would not have made sense were it not a legitimate coal operation. Spending money, his compensation being on the actual return of coal. They had deals. He looked at them. He said that's not a good deal for us to do. They didn't do those deals. At some point later, and it looked like from the evidence when Brian Rose kind of had mental health issues or otherwise was concerned, they started to just lie indiscriminately, and by I mean the people in the Johnson City office, about a whole series of things. The argument to the jury had always been that Johnny Phillips' involvement was not part of this other subsequent criminal activity. What happened in Missouri, there were no misrepresentations that we argued to the jury were at all material to the transaction that was happening between the investor and NCC at that time. We conceded that three of the individuals used names that they had changed. Two of them changed them legally. Mr. Rose went back to his birth name. The evidence was clear and undisputed by us that they knew that false names had happened. And the government then argued repeatedly that that false name use was enough to convict. It was a material fact to show fraud. And I apologize. We have not briefed a 28-J letter on this, but in the course of preparing an oral argument, we've come across a case in the 11th Circuit that I think Judge DePauw knows well, which is Taklov. And I can provide the citation. Why don't you give us a citation, a letter afterwards, and that way the government can respond to it. Maybe she's a little more fair. So what the issue there is, and what I think happened here, is there may be all of this fraud happening over here. And there may ultimately be a fraudulent act that happens. But if the only thing the jury knows about Johnny Phillips, or believes based on the contradictory evidence, is that he was present when false names were used, they need to be instructed that that misstatement's not necessarily material. Because that's certainly the way the government argued it. We put 53 citations where they make that argument or focus on that question. And so there's sort of two steps.  Then they've met their burden. They've convicted him. If the jury just believes that Johnny was present when they used fake names, and that's enough for conspiracy. How did the absence of this additional instruction interfere with the way you got to argue the case and do your closing argument and put on evidence or not put on evidence? I don't understand how it seems like you're still allowed to argue all of this. I think it's the same reason that Taklov addresses this directly. It hurts your argument because it's not bolstered by the fact that it's actually the law. If we say the law is one way, the government says the law is different, the jury looks at the court and the court says nothing, we are at a disadvantage. If the law is... But just because it hurts you doesn't mean that it's error. There are a lot of things in the trial that are going to hurt you. And this is why, Judge Donald, that we focus so much on the insufficiency of evidence about Johnny because it was such a tenuous case because there were so many reasons to doubt that that was one thing they could hang their hat on as a jury. They deliberated for a number of days. But you started with one, argument one. You said, well, that really isn't our big one. We're going to two through five. But now you're being pushed on two through five and we're going back to one? No, I'm not arguing that that's how you should reverse. But I'm saying that the insufficiency demonstrates the prejudice. The question, as I understood it, was a question of prejudice. Oh, I got it. And that is the prejudice. And all of the briefing we put there demonstrates the prejudice of these other issues. I only have 30 seconds. This instruction you asked for, is this the one that mainly went to money laundering or not? No, it didn't. It had nothing to do with money laundering? Not at all. Not at all. This is a material misrepresentation. That's correct. And I've got only 20 seconds before I hand it over to the government. I want to focus on the testimony of Agent Worsham, which was entirely inappropriate, entirely prejudicial. There's no way it can be justified under the law. Can I ask you one question on that? The jury obviously disregarded his testimony because he essentially said they committed conspiracy to money. Your client conspired to money launder, correct? That is one thing he said. He said many other things. But that was very problematic. I'll agree with you. But the jury discounted him. We know they discounted him because they found your client not guilty of that, correct? That's true. Well, I'll say it's true they acquitted him. I don't think it's true that you could say that his entire two hours or four hours of testimony was there. But I can say some of the critical testimony that you have critiques for, they disregarded completely. Potentially. I mean, I don't know how it affected the rest of the deliberations. We don't get to see that process. Well, he said your client's guilty of conspiracy to money launder, and they said no. Well, what he also said specifically was that they came together and agreed to organize an enterprise. This is in the government's brief. And there's three sentences the government actually highlights for you in a drop quote where he goes far beyond talking about money laundering. It's on the government's brief at page 31. I'm sorry. That's the quote where he's being told, the jury's being told that he can take this as an opinion witness. It's in our brief in the beginning. Probably the best place is the reply brief where I underline it. You have five minutes. Each show's five minutes rebuttal. You'll get your five minutes. That'll allow us a lot of time. Thank you. Ms. Brenneman. May it please the court, Deborah Brenneman for the United States. The Constitution entitles a criminal defendant to a fair trial, but not a perfect one. Mr. Phillips received a fair trial by a jury, and his resulting conviction should be affirmed. There are several things on which I agree with Mr. Little. The evidence of the overall scheme is well settled. That Mr. Brian Rose was in charge of it, also well settled. That there were improprieties at trial. We'll also agree to that. The question that's flagged in our brief, asked on page ID 3743-44 to Agent Worsham to offer an opinion as to whether or not the defendant had committed a conspiracy to commit money laundering, was improper. We agree with that. But as you just noted, that was harmless error here, because it didn't affect the actual outcome of this case. But it seems to me you have, on these questions, a lay witness giving opinion as to the ultimate issue, which is almost universally disfavored. As a trial judge, I never let it happen, because agents always wanted to do it. And it's very problematic when you have a government agent that is inherently trusted by the jury, opining on someone's guilt. And their point is, okay, that's fine, you're right, Judge, the money laundering, we weren't convicted. But he also said, and this is what they underlined, all these individuals essentially agreed to the plan in which they presented to the investors using fake names, they made fake representations to these investors, and they essentially sold a coal mine that they had no lease to. So what he's saying there is they're also guilty of conspiracy. Why isn't that equally problematic, or more problematic? As to that portion, Agent Worsham is summarizing evidence. Ideally, he should not be summarizing the evidence for the jury. That's what we normally do in closing argument. But all of the elements that he identified... Did they object to this? I don't recall offhand. I'd have to double check. It says over defense objection. That is entirely possible. This was a hotly contested trial. Right, but this was a closed case. As the defense fairly points out, there wasn't a whole lot of evidence tying him in. He was kind of the last one, right? Rose is the bad actor, and you've got Phillips kind of at the bottom, involved in just bringing people in, right? I would disagree that he's at the bottom. He was central to the scheme, but he was not involved in day-to-day operations. Defendant himself testified at trial that most of his interactions were solely with Brian Rose. They were verbal. They were not in writing, and that it was usually just the two of them. So it's unsurprising that Brian Rose and the defendant are the only two who could testify about those conversations. The jury heard from both men, and if they credited Mr. Rose's testimony... Again, we don't know exactly which evidence they credited. Here's the problem with the agent, is it's a he said, he said case. And then you've got the agent come in and say they agreed to this plan. So the agent's instantly tipping the scales in the government's favor. And that's not what an agent should be doing on the stand. I agree, that's not what an agent should do. So what do we do with this problematic testimony? Because the money laundering, I agree with you, it's harmless because he was not guilty. What do we do with this? Well, we consider it in the totality of the circumstances. Whenever the court finds an impropriety in trial, it considers whether or not that error was harmless. And so we look at the totality of... I'm sorry to interrupt you. That's fine. Did the judge give a limiting instruction after this testimony, after they object? The testimony comes in, does the judge give a limiting instruction right thereafter? After the underlying portion you just read to me, I do not recall. I'm sorry. Well, did he give a limiting... When the question initially asked him, did he conspire to commit money laundering, the judge gave an instruction which is complicated. It does not specifically tell the jury to disregard it. It seems that there was a lot of confusion at that point. I don't think that was a satisfactory limiting instruction at that point. I don't know if there was a separate instruction after some of the other testimony by the agent. Well, if the instruction was confusing to the lawyers who are law trained, wouldn't that make it sort of non-harmless and even more grave for the lay jurors who are hearing this and being asked to decide these factual issues applying a legal standard? Possibly. What the court said at that point was, to the extent he's offering an opinion, you get to decide whether or not to credit his opinion. And when you consider that in context with all of the other instructions the jury received at the end, when they were told that they were the sole arbiters of the facts, that this was their job to determine, I think that corrects any incompleteness, any miscommunication in that original limiting instruction during the agent's testimony. Defendant was central to the success of this scheme. What made him? Some people said he's at the bottom. What made him, in your argument, central to the scheme? As Brian Rose testified, he was the only one who had any experience in the coal industry. Without Johnny Phillips' involvement, the scheme would not have appeared legitimate. That's the reason they asked him to pose as a third-party buyer. That's the reason he came to investor meetings. That's the reason he went to Missouri with them, for example. Were there people who stated that they would not have invested were Phillips not present? Absolutely. I believe Dr. J.W. Phillips and Mr. Plummer both testified to that, is my recollection. I don't have a page ID offhand, I'm sorry. Obviously, showing defendant's knowledge in a scheme is rarely proved by direct evidence. We submit there was ample circumstantial evidence from which the jury could conclude that he knew the full scope of the scheme, that he knew that it was a fraudulent scheme, and that he joined that scheme. As I said earlier, I know this is a somewhat lengthy record. It was a relatively long trial. They suggested that the government made fake names central. To support that argument, they said that we asked over 50 questions about it. Just like to remind you, this was a case that involved 15 government witnesses, over 200 exhibits, it lasted nearly two weeks. There were more than 5,000 questions asked at trial. So 50 questions, although it might sound like a large number, it's less than 1%. It was hardly the key focus of our trial. And this case, as the defense recognized and as the court recognized several times, this case was about far more than fake names. But the fake names were a key element from which the jury could conclude the defendant knew that something fishy was going on. And he either knew or was deliberately ignorant to the full scope of that. I agree that the evidence was not as overwhelming as to Mr. Phillips as it was to some other members in the conspiracy. Many of them had paper trails. Mr. Phillips did not, because he negotiated many of his deals verbally only with Mr. Rose. The jury credited Mr. Rose's testimony in order to find him guilty of conspiracy. And this court, of course, doesn't revisit those credibility findings. In our view, Mr. Phillips was fairly tried, although not perfectly tried, fairly tried and rightly convicted. His conviction should be affirmed. Okay, thank you. Thank you. Mr. Little. Two responses very immediately. Johnny was not central to this effort. And you know that in part because once he goes to the Missouri meeting, those investors who eventually invest, they don't invest immediately after the Missouri meeting. They go, they actually visit these sites. They are having constant weekly or daily conversations with the other co-conspirators. They don't see Johnny Phillips. Two of the investors at that meeting don't recall his name, don't even know what he looks like, can't identify him in the courtroom. The two who were there gave – But some got involved because of his reputation, correct? I think they may have said that afterwards, but when we actually cross-examined them about what they did sort of in due diligence, none of it had to do with Johnny Phillips. I mean, it all had to do with we went out there and brought – Right, but they said it, and the jury could credit that he was an important figure in this. There was testimony to that effect. It was very thin, but if you took those pieces, you could – Thin or not, right, there was. And to go to the agent, I mean, he was allowed to testify, and our reply brief is where I've sort of put most of these. But he was able to say that Rose received income that was not legitimate coal income, that investigators have found no evidence of the actual production of coal, the sentence that you identified earlier, all of this starts on PDID 3734. It continued for half an hour to an hour, with us objecting repeatedly. Can I go back to something you argued earlier, and I just want to make sure I'm getting your point. This is this additional instruction you wanted, that not all misstatements are material. Yes. So what were you trying to do with that? I mean, because that – both of the things you wanted the judge to add looked like things that go to whether there was an underlying fraud. And that takes you back to the question that this was a conspiracy charge. So I'm trying to figure out – so let's just say the instruction was a good idea in the abstract. It would have seemed to have been a good idea in a case about the underlying fraud, not about conspiracy and evidence to join the fraud. This is one of the difficulties of conspiracy where there's multiple acts that could be seen as fraud. And so in the Takalov case – But, I mean, you've already acknowledged there was a fraud. We never acknowledged that Johnny was part of it. So let me give you the Takalov case. So there's a hypothetical in there where an individual lies about getting someone to come to their house to get a dollar, to exchange a dollar for four quarters. That lie about, hey, come to my house. My child's sick. I'm going to give you a dollar. Give me four quarters. That lie is not fraud because there are four quarters that are handed over. There's no property that's being deprived there. At the same time, if the person had lied – That seems helpful to showing there was no underlying fraud. The second question is – But that's not your argument. Let me get there. I promise I'm going to get there. The second part is if the same lie takes place, hey, come here. I've got a reason. I'm lying to you about why I'm exchanging this dollar. And instead of giving you a real dollar for four quarters, I give you a fake dollar, a counterfeit dollar. Well, that would establish fraud. Here the question is, we disputed whether Johnny was part of exchanging that – you can imagine a scenario in which there's a dispute about whether or not that dollar is counterfeit. There's a dispute about whether or not the individual who we're representing is part of that agreement to give a fake dollar over. So then there are really two things the jury's looking at. First, is that initial lie sufficient to prove fraud? And second is the second deprivation of property, the taking the fake dollar across the table fraud. But the government can use the knowledge of the fake names to show knowledge of joining the conspiracy. It has nothing to do with whether that was underlying fraud. So that's why the instruction doesn't seem to me that material. They can absolutely argue that it's knowledge, but they argue that it was sufficient for conviction. And they say in the closing, this is material to the fraud. This is material and sufficient to the fraud. And so the jury could be led to believe without that instruction that they can convict solely on the use of those fake names without having to resolve the dispute unanimously amongst themselves about whether Johnny agreed to participate in the rest of this. But the jury was instructed, though, to consider all of the evidence in the case. And so, I mean, I don't think that you can just hearken on that instruction in the grand scheme of things and show that there was anything other than harmless if it, in fact, was an error not to give that. And, again, Your Honor, I think in our letter brief I'll bring up the language in Tackle-Off that addresses this. But the problem is we need to be able to.  I know. I think you're talking about apples and oranges. Judge Sutton's point is a valid one, which is the jury surely can use the knowledge of the false names to conclude he was a part of a broader conspiracy. It's a different way of piercing this, and that's what it seemed the government was doing here. We don't disagree, but we thought the jury should also be aware that that's not sufficient. And I think that it's not sufficient to actually establish. It's not sufficient to establish the fraud, but it's sufficient for the jury to use it to conclude he was conspiring with Rose to commit fraud. And how can it be harmful if you agree there was a fraud? Because what Judge Leparz just said, if the jury was told that in any way in our trial, we wouldn't be here with those issues. These are things that I think this panel certainly knows. These are things that we believe. But the judge told the jury that they had to consider all of the evidence. But it's not a question of all of the evidence. It's a question of what in their minds would they be allowed to convict upon. And if the language that Judge Leparz just described, we would have been happy with that. We would have been happy with an instruction that said anything about the difference between establishing knowledge of a fraud and actually sufficient to complete the fraud or to agree to a conspiracy. If the jury thinks, I don't want to get into whether or not he had knowledge of the rest of the stuff, we think it was enough that he used fake names, he had knowledge of that, that we want to convict. And just finally on the Worsham, there's page upon page upon page where he objected. The judge changed his rulings, was unsure about really what he was doing, about whether it should come in, couldn't come in. He ends it by giving the instruction this person is an opinion witness. They can rely upon his opinion that these bad things that happened. And we believe that alone can justify a reversal. All right. Thank you so much to both of you for your helpful briefs and oral arguments. Thanks for answering our questions, which we always appreciate. Clerk may call the next case.